TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LYNDSI ALLSOP (Cal. Bar No. 323485)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3165
     Facsimile: (213) 894-0141
     E-mail:   Lyndsi.Allsop@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MARLON MOODY,<br><br>　　　　Defendant. | No. CR 2:21-00239-DSF-1<br><br>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT MARLON MOODY<br><br>Hearing Date: November 1, 2021<br>Hearing Time: 8:30 a.m.<br>Location:　　Courtroom of the<br>　　　　　　　Hon. Dale S. Fischer |

　　Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Lyndsi Allsop, hereby files its Sentencing Position Regarding Defendant Marlon Moody.

//

//

//

//

//

//

This Position is based upon the attached Memorandum of Points and Authorities, the Declaration of Lyndsi Allsop and Exhibit A attached thereto, the files and records in this case, the Presentence Investigation Report (Dkt. No. 43) and sentencing recommendation letter (Dkt. No. 42) prepared by the United States Probation and Pretrial Services Office, and such further evidence and argument as the Court may wish to consider at the time of sentencing.

Dated: October 18, 2021         Respectfully submitted,

                                     TRACY L. WILKISON
                                     Acting United States Attorney

                                     SCOTT M. GARRINGER
                                     Assistant United States Attorney
                                     Chief, Criminal Division

                                         /s/
                                     LYNDSI ALLSOP
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant MARLON MOODY and his co-defendant Brian Benson conspired to use their jobs as cargo handlers to steal $224,000 worth of gold bars stored at Los Angeles International Airport ("LAX"). Defendant pleaded guilty to conspiracy to commit theft of an interstate or foreign shipment, in violation of 18 U.S.C. § 371. (Dkt. No. 40.)

The government agrees with the United States Probation and Pretrial Services Office (the "USPPSO") that defendant's total offense level under the Guidelines is 15, his criminal history category is I, and his Guidelines sentencing range is 18 to 24 months' imprisonment. The government disagrees, however, with the USPPSO's recommendation that the Court vary down and impose a sentence of 15 months' imprisonment. (Dkt. No. 42 ("Sent. Rec. Ltr") at 1-2). As detailed below, in light of defendant's abuse of his position and brazen theft of nearly a quarter million dollars, the government recommends a low-end term of imprisonment of 18 months, one year of supervised release, a $7,500 fine, and a special assessment of $100.

**II.   STATEMENT OF FACTS**

   **A.   Offense Conduct**

Defendants conspired with each other and others to steal four gold bars valued at approximately $56,000 each. (Dkt. No. 31 ("Plea Agr.") at 17.) The gold bars were part of a 2,000-gold-bar shipment Brink's Global Services USA, Inc. ("Brink's") sent from Australia to New York. (Id.) At the time of the gold shipment, defendants were employed by Alliance Ground International ("AGI"), a company that

provided ground handling at LAX.  (Id.)  As part of their duties at AGI, defendants offloaded cargo from aircrafts at LAX and had access to certain sections of the airport.  (Id.)

On the date of the theft, defendants exchanged text messages about the Brink's gold bar shipment stored in an LAX warehouse. During the exchange, co-defendant Benson wrote, "That's big lol" and "I need to take a closer look."  (Declaration of Lyndsi Allsop ("Allsop Decl."), Ex. A (Text Messages) at 1.)  Following which, defendant wrote, "I found it", "I could not get all", and "It said brinks on it".  (Id.)  Co-defendant Benson replied, "Where at . . I need to get 1."  (Id. at 2.)  Defendant then told co-defendant Benson to go get additional gold bars, and co-defendant Benson asked if the box was open.  (Id.)  Defendant confirmed the box was open and described its location.  (Id.)

To effectuate the theft, defendant placed a box containing 25 gold bars on a vehicle used for offloading aircraft cargo (the "belt loader") and parked the belt loader near a warehouse.  (Plea Agr. 18-19.)  Defendant removed four gold bars from the shipment and hid them on his person.  (Id. at 19.)  Co-defendant Benson ultimately did not retrieve any additional gold bars.  (Dkt. No. 43 ("PSR") ¶ 19.) Following the theft, co-defendant Benson picked defendant up at the belt loader in an AGI van and drove him to another warehouse at LAX. (Plea Agr. at 20.)  Defendants met for several minutes inside the warehouse and then left LAX together on foot.  (Id.)  Once defendants exited LAX, defendant gave co-defendant Benson one gold bar.  (Id.) That same day, they exchanged text messages about the gold bars and pawn shops in the Los Angeles Area.  (Id.)

Days after the theft, defendant gave one gold bar to his cousin (J.S.) and told him to exchange the gold bar for a vehicle and/or money. (Id. at 20.) He also directed him to buy equipment to melt the gold bar. (PSR ¶ 26.) Defendant buried two gold bars in his backyard and co-defendant Benson hid one gold bar in his bedroom. (See id. at 20-21.)

Defendant later confessed to the FBI that he took the four gold bars, and said he buried two gold bars in his backyard, gave one gold bar to co-defendant Benson, and gave another gold bar to J.S. (Allsop Decl. ¶ 2.) In the presence of FBI agents, defendant informed co-defendant Benson that he had confessed to taking the gold bars and encouraged co-defendant Benson to also tell the truth. (Id.) After this call, co-defendant Benson admitted that he received a gold bar from defendant. (Id.) Defendants and J.S. then turned all four gold bars over to agents. (Id.)

**III. USPPSO CALCULATIONS AND SENTENCING RECOMMENDATION**

The USPPSO determined that defendant's base offense level is six, pursuant to U.S.S.G. § 2X1.1(a), (c); 2B1.1(a). (Dkt. No. 45 ("PSR") ¶¶ 3, 35.) Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), the USPPSO applied a 10-level increase because the intended loss amount exceeded $150,000. (Id. ¶¶ 3, 36-37.) The USPPSO applied a two-level increase because the offense involved goods or chattels from a cargo shipment, pursuant to U.S.S.G. § 2B1.1(b)(15)(B). (Id. ¶¶ 3, 37.) After a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the USPPSO calculated a total offense level of 15. (Id. ¶¶ 45-47.)

Defendant has no criminal history. (Id. ¶¶ 49-56.) The USPPSO accordingly found that defendant has zero criminal history points,

3

placing him in Criminal History Category I.  (Id. ¶¶ 52-53.)  Based on a total offense level of 15 and a criminal history category of I, defendant's Sentencing Guidelines range is 18 to 24 months' imprisonment and one to three years' supervised release.  (Id. ¶¶ 89, 92.)

The government agrees with the USPPSO's calculations except that the government disagrees with the USPPSO's decision not to implement a two-level increase for an aggravating role adjustment.  To be sure, consistent with its obligations in the plea agreement, the government recommends a two-level downward variance due to defendant's early acceptance of responsibility during the COVID-19 pandemic, and so the government ultimately agrees that the total offense level should be 15.  (Plea Agr. ¶ 5, U.S.S.G. § 3B1.1(c).)  The government further disagrees with the USPPSO's recommendation that this Court vary downward and sentence defendant to 15 months' imprisonment.  (Sent. Rec. Ltr at 1-2).

**IV.   THE GOVERNMENT'S SENTENCING RECOMMENDATION**

The government recommends that the Court impose an 18-month term of imprisonment followed by a one-year term of supervised release, a $7,500 fine, and a $100 special assessment.  This sentence is "sufficient, but not greater than necessary," to address defendant's criminal conduct, taking into account all the factors the Court must consider under 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3553(a).  Such a sentence justly balances the seriousness of the offense and the need for the kind of sentence imposed against the history and characteristics of defendant in light of both the mitigating and aggravating factors.  See id.

### A. AN AGGRAVATING ROLE ADJUSTMENT IS APPROPRIATE

Defendant planned and executed a theft, and then distributed the plunder. He should be assigned an aggravating role adjustment. To qualify for an aggravating role adjustment, "the defendant must have been the organizer, leader, manager, or supervisor of one of more participants." U.S.S.G. § 3B1.1, comment.(n.1)). A court may impose this enhancement only if there is "evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." United States v. Ingham, 486 F.3d 1068, 1074 (9th Cir. 2007) (quoting United States v. Avila, 95 F.3d 887, 889 (9th Cir. 1996)) (internal quotation marks omitted). Courts should consider the following list of factors when determining whether an aggravating role adjustment applies: (1) the defendant's exercise of decision-making authority, (2) the nature of defendant's participation in the commission of the offense, (3) the defendant's recruitment of accomplices, (4) the defendant's claimed right to a larger share of the fruits of the crime, (5) the defendant's degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of the defendant's control and authority exercised over other participants. U.S.S.G. § 3B1.1, comment.(n.4.).

All seven factors weigh in favor of assigning defendant an aggravating role adjustment. First, the extent of defendant's decision-making authority compared to co-defendant Benson's is unclear. However, since defendant physically took the gold bars (Plea Agr. at 18-19), this suggests he carried at least some level of authority. Accordingly, the first factor leans in favor of an

aggravating role adjustment.  Second, defendant played the most important role in the theft; he located and took the gold bars from the Brink's shipment.  (Id.)  And further, he distributed the bars amongst the participants.  (See id. at 20.)  Because defendant committed the theft itself and distributed the loot, the second factor weighs in favor of an aggravating role adjustment.  Third, whether defendant recruited co-defendant Benson is unclear; however, his distribution of the gold bar to J.S., who otherwise would not have known about the gold bars because he did not work at LAX, and directions J.S. to exchange or melt the gold bar suggests that he likely recruited him into this conspiracy.  The third factor weighs in favor of the adjustment.  Fourth, defendant kept a larger share of the proceeds.  He kept two of the four gold bars that he stole, and gave the remaining bars to co-defendant Benson and J.S.  (Id.)  Each gold bar was worth $56,000, which means defendants proceeds totaled $112,000 while his co-conspirators' totaled $56,000.  It is indisputable defendant gained the most from this theft.  The fourth factor weighs in favor an adjustment.  Fifth, defendant planned to steal gold from the Brink's shipment.  On the date of the theft, defendant texted co-defendant Benson, "I found it" and shortly thereafter, explained that he "could not get all".  (Id. at 1-2.) These texts suggest the theft was planned, and that defendant looked for the gold with the intention of stealing it from the shipment. The fifth factor weighs in favor an adjustment.  Sixth, the limited and isolated nature of the crime does not diminish its impact and significance.  To the contrary, it makes it even more impactful. During a workday and while he was on the clock, defendant stole $224,000 worth of property.  The high value of these stolen items

balances the sixth factor in favor of an aggravated role adjustment. Seventh, defendant exercised organization and, at least to some extent, supervision over J.S.[1] and co-defendant Benson. Defendant gave a gold bar to J.S. and directed him to hold it for him and to exchange it for money or a vehicle. (PSR ¶ 26, Plea Agr. at 20.) Defendant also directed him to order a machine to melt the gold bar. (PSR ¶ 26.) In addition, defendant gave a gold bar to co-defendant Benson and told him to stash the gold bars when he discovered the theft had been reported. (Plea Agr. at 20, Ex. A at 1.) Accordingly, the seventh and most important factor weighs in favor of an aggravating role adjustment.

The small number of participants does not cut against a finding that defendant exercised a leadership role. The Guidelines allow for an aggravated role enhancement where the leader exercised control over one or more participants. U.S.S.G. § 3B1.1, comment.(n.1)). Also, although defendant's direction of others occurred on few occasions, this is not, on its own, outcome determinative. See, e.g., United States v. Beltran, 165 F.3d 1266, 1271 (9th Cir. 1999) (finding a single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement). On balance, the facts of this case strongly weigh in favor of applying an aggravating role adjustment. Accordingly, this Court should apply one.

---

[1] "Participant," in § 3B1.1, is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment.(n.1).

7

**B.     NATURE AND CIRCUMSTANCES OF THE OFFENSE**

Defendant conspired to steal and actually stole $224,000 worth of gold and kept $112,000 worth for himself. (Plea Agr. at 20, PSR ¶ 25.) Whether defendant engaged in theft out of greed or grief over the passing of his father (see PSR ¶ 71), he led a brazen theft of nearly a quarter million dollars' worth of gold, injured a victim (Brink's), and betrayed the position of trust he held as an AGI employee. As an AGI employee, defendant was entrusted with handling cargo shipments at LAX and granted access to certain sections of the airport. (Plea Agr. at 17.) Defendant squandered that trust by stealing from those who relied on him to handle their property. Accordingly, a low-end Guidelines sentence of 18 months is necessary to account for the nature and circumstances of the offense.

**C.     HISTORY AND CHARACTERISTICS OF DEFENDANT**

Defendant's history and characteristics present both mitigating and aggravating factors. First, in mitigation, defendant accepted responsibility and pleaded guilty, which allowed the case to be resolved efficiently and saved the government and the Court valuable resources during a pandemic. Second, defendant's criminal history score is zero. (PSR ¶¶ 52-53.) Third, defendant has a relatively consistent history of employment, which indicates he has a lower-than-average risk of reoffending. (See id. ¶¶ 75-79.) Fourth, despite a difficult childhood, defendant currently enjoys a strong relationship with and is a source of support for his family. (See id. ¶¶ 59-67.) These family ties will help him remain on a law-abiding track. Fifth, defendant has already faced, and will continue to face, serious consequences for his actions; he lost his job and has a felony conviction on his record for the rest of his life.

Nonetheless, despite defendant's stable employment and family support, he chose to abuse his position of trust and lead this significant crime. Thus, on balance, defendant's history and characteristics counsel in favor of a low-end Guidelines sentence of 18-months' imprisonment.

### D. NEED FOR SENTENCE IMPOSED TO PROMOTE RESPECT FOR THE LAW, AFFORD ADEQUATE DETERRENCE, PROVIDE JUST PUNISHMENT FOR THE OFFENSE, PROTECT THE PUBLIC, AND AVOID SENTENCING DISPARITIES

Given defendant's abuse of his position of trust and participation in the theft of gold worth $224,000, the government submits that an 18-month term of imprisonment is necessary to promote respect for the law and afford adequate deterrence, provide just punishment, and protect the public. Because it is within the Guidelines range, an 18-month sentence will also prevent unwarranted sentencing disparities between similarly situated defendants. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010), overruled on other grounds by United States v. Miller, 953 F.3d 1095 (9th Cir. 2020) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity[.]'").[2]

---

[2] The fine range for this offense is $7,500 to $75,000. (PSR ¶ 97, U.S.S.G. § 5E1.2(c)(3).) Per the USPPSO, defendant has not demonstrated an inability to make monthly payments towards a fine. (PSR ¶ 85.) Thus, the government agrees with the USPPSO that the Court should order a $7,500 fine. (Sent. Rec. Ltr. at 1.) Also, the government submits that there is no restitution in this case. (See PSR ¶¶ 99-100.) Because defendants returned the gold bars, there is no actual loss. United States v. Carter, 742 F.3d 440, 447 (9th Cir. 2014) ("An item returned is no longer a loss as of the day it lands in the victim's hands . . ."). And, although Brink's incurred additional insurance costs during the pendency of this case, these expenses were not directly caused by either damage to or the loss or destruction of the gold bars and thus, they are consequential losses,
*(footnote cont'd on next page)*

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to an 18-month term of imprisonment followed by a one-year period of supervised release with the conditions recommended by the USPPSO, a $7,500 fine, and a special assessment of $100.

---

which are not compensable as restitution. United States v. Sablan, 92 F.3d 865, 870 (9th Cir. 1996) ("restitution can only include losses directly resulting from a defendant's offense"; holding consequential expenses were improperly included in the district court's restitution order).